1

2

3

4

5

6

7

8                 **IN THE UNITED STATES DISTRICT COURT**

9             **FOR THE EASTERN DISTRICT OF CALIFORNIA**

10

11   MICHAEL A. GRUBER,            No. 2:15-cv-1680-CMK

12          Plaintiff,

13     vs.                 <u>MEMORANDUM OPINION AND ORDER</u>

14   COMMISSIONER OF SOCIAL
      SECURITY,

15          Defendant.

16   _____/

17         Plaintiff, who is proceeding with retained counsel, brings this action for judicial

18   review of a final decision of the Commissioner of Social Security under 42 U.S.C. § 405(g).

19   Pursuant to the written consent of all parties, this case is before the undersigned as the presiding

20   judge for all purposes, including entry of final judgment.  <u>See</u> 28 U.S.C. § 636(c).

21   Pending before the court are plaintiff's motion for summary judgment (Doc. 14), and defendant's

22   cross-motion for summary judgment[1] (Doc. 21).

23   _____

24         [1]     Defendant also filed an unopposed motion for an extension of time to respond to plaintiff's motion for summary judgement.  The proposed order filed with the motion was not emailed to chambers as required by Local Rule 137(b).  Prior to the court issuing an order on the

25   motion, defendant filed the cross-motion for summary judgment.  Accordingly, the unopposed motion for additional time is granted, and the cross-motion for summary judgment is deemed

26   timely.

# I. PROCEDURAL HISTORY

Plaintiff applied for social security benefits on January 19, 2012, alleging an onset of disability on October 14, 2009, due to disabilities including bad heart, seven way bypass, titanium rod in right leg, torn rotator cuff, affective mood disorder, and chronic ischemic heart disease with or without angina (Certified administrative record ("CAR") 85-86, 97-98, 109-110, 206-210).  Plaintiff's claim was denied initially and upon reconsideration.  Plaintiff requested an administrative hearing, which was held on September 10, 2013, before Administrative Law Judge ("ALJ") Bradlee S. Welton.  In a January 30, 2014, decision, the ALJ concluded that plaintiff is not disabled[2] based on the following findings:

---

[2]       Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program, 42 U.S.C. § 401 et seq.  Supplemental Security Income ("SSI") is paid to disabled persons with low income.  42 U.S.C. § 1382 et seq.  Under both provisions, disability is defined, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment."  42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A).  A five-step sequential evaluation governs eligibility for benefits.  See 20 C.F.R. §§ 423(d)(1)(a), 416.920 & 416.971-76; Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987).  The following summarizes the sequential evaluation:

> Step one:  Is the claimant engaging in substantial gainful activity?  If so, the claimant is found not disabled.  If not, proceed to step two.
> Step two:  Does the claimant have a "severe" impairment?  If so, proceed to step three.  If not, then a finding of not disabled is appropriate.
> Step three:  Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App.1?  If so, the claimant is automatically determined disabled.  If not, proceed to step four.
> Step four:  Is the claimant capable of performing his past work?  If so, the claimant is not disabled.  If not, proceed to step five.
> Step five:  Does the claimant have the residual functional capacity to perform any other work?  If so, the claimant is not disabled.  If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process.  Bowen, 482 U.S. at 146 n.5.  The Commissioner bears the burden if the sequential evaluation process proceeds to step five.  Id.

1.  The claimant meets the insured status requirements of the Social Security Act through December 31, 2013.

2.  The claimant has not engaged in substantial gainful activity since October 14, 2009, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).

3.  The claimant has the following severe impairments: degenerative disc disease of the lumbar and cervical spine, torn right rotator cuff, status post coronary artery bypass graft, anxiety, and degenerative joint disease of the right knee (20 CFR 404.1520(c) and 416.920(c)).

4.  The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR  404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5.  After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except the claimant can lift and/or carry twenty pounds occasionally and ten pounds frequently, can sit for six hours in an eight-hour day with the option to stand up every thirty minutes for one to two minutes at the work station to stretch, can stand and/or walk for six hours in an eight-hour day, can occasionally climb ramps and/or stairs, can occasionally stoop, balance, crouch, crawl and kneel, cannot climb ladders, ropes or scaffolds, can occasionally reach overhead with the right upper extremity, can occasionally finger with the right upper extremity and can occasionally interact with the public and coworkers.

6.  The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7.  The claimant was born on August 26, 1961 and was 48 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date.  The claimant subsequently changed age category to closely approaching advanced age (20 CFR 404.1563 and 416.963).

8.  The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9.  Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10.    Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).

11.    The claimant has not been under a disability, as defined in the Social Security Act, from October 14, 2009, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

(CAR 9-17). After the Appeals Council declined review on March 6, 2015, this appeal followed.

## II.  STANDARD OF REVIEW

The court reviews the Commissioner's final decision to determine whether it is: (1) based on proper legal standards; and (2) supported by substantial evidence in the record as a whole.  See Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999).  "Substantial evidence" is more than a mere scintilla, but less than a preponderance.  See Saelee v. Chater, 94 F.3d 520, 521 (9th Cir. 1996).  It is "such evidence as a reasonable mind might accept as adequate to support a conclusion."  Richardson v. Perales, 402 U.S. 389, 402 (1971).  The record as a whole, including both the evidence that supports and detracts from the Commissioner's conclusion, must be considered and weighed.  See Howard v. Heckler, 782 F.2d 1484, 1487 (9th Cir. 1986); Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985).  The court may not affirm the Commissioner's decision simply by isolating a specific quantum of supporting evidence.  See Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989).  If substantial evidence supports the administrative findings, or if there is conflicting evidence supporting a particular finding, the finding of the Commissioner is conclusive.  See Sprague v. Bowen, 812 F.2d 1226, 1229-30 (9th Cir. 1987). Therefore, where the evidence is susceptible to more than one rational interpretation, one of which supports the Commissioner's decision, the decision must be affirmed, see Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002), and may be set aside only if an improper legal standard was applied in weighing the evidence, see Burkhart v. Bowen, 856 F.2d 1335, 1338 (9th Cir. 1988).

/ / /

1
## III.  DISCUSSION

2       Plaintiff argues the ALJ erred in three ways: 1) the ALJ failed to explain both the

3  physical and mental Residual Functional Capacity (RFC); 2) the ALJ erred in ignoring both

4  plaintiff's testimony and that of his sister; and 3) the ALJ erred in discrediting his treating

5  physician's opinion.  The court will address these issues in reverse order.

6       ### A.    Medical Opinion

7       Plaintiff argues the ALJ wrongly rejected Dr. Dhaliwal's opinion.  Dr. Dhaliwal,

8  who plaintiff states was a treating physician, examined plaintiff, reviewed the treating records,

9  and determined plaintiff is limited in his physical abilities.  Dr. Dhaliwal noted in his September

10  25, 2013, letter that plaintiff had last been seen in 2009, but he did not specifically remember him

11  as a patient.  After noting plaintiff's medical conditions, he found plaintiff's physical

12  examination showed limitations with bending his back as well as the use of his right shoulder.

13  Specifically, Dr. Dhaliwal found plaintiff limited in sitting and standing no more than 4-6 hours

14  in an 8-hour day, reaching, grasping, lifting no more than 20 pounds for no more than 3-4 hours

15  in an 8-hour day; no running, climbing and lifting greater than 20 pounds; and no reaching above

16  the shoulder or repetitive motion with right arm for 2 hours.

17       The ALJ rejected Dr. Dhaliwal's opinion, in favor of another treating physician,

18  Dr. Yap.  The ALJ stated:

19              Dr. Dhaliwal's opinions are inconsistent with the treating
20       physician's medical records, which revealed no cardiac complaints,
         stable coronary artery disease, no depression and only mild
         abnormalities on the lumbar MRI (Ex. 10F/25-43, 40, 45, 55-56).
21       Additionally, the record also shows that the claimant reported that
         his knee and shoulder were doing better and he was not depressed
22       (Ex. 10F/36-37).  Accordingly, Dr. Dhaliwal's opinions are given
         little weight.

23  (CAR 19).

24       Plaintiff contends the ALJ erred in rejecting Dr. Dhaliwal's opinion because the

25  reasons given were insufficient.  Defendant counters that the reasons provided for the rejection

26  were sufficient and well supported by the record as a whole.

1    The weight given to medical opinions depends in part on whether they are

2 proffered by treating, examining, or non-examining professionals.  See Lester v. Chater, 81 F.3d

3 821, 830-31 (9th Cir. 1995).  Ordinarily, more weight is given to the opinion of a treating

4 professional, who has a greater opportunity to know and observe the patient as an individual,

5 than the opinion of a non-treating professional.  See id.; Smolen v. Chater, 80 F.3d 1273, 1285

6 (9th Cir. 1996); Winans v. Bowen, 853 F.2d 643, 647 (9th Cir. 1987).  The least weight is given

7 to the opinion of a non-examining professional.  See Pitzer v. Sullivan, 908 F.2d 502, 506 & n.4

8 (9th Cir. 1990).

9    In addition to considering its source, to evaluate whether the Commissioner

10 properly rejected a medical opinion the court considers whether:  (1) contradictory opinions are

11 in the record; and (2) clinical findings support the opinions.  The Commissioner may reject an

12 uncontradicted opinion of a treating or examining medical professional only for "clear and

13 convincing" reasons supported by substantial evidence in the record.  See Lester, 81 F.3d at 831.

14 While a treating professional's opinion generally is accorded superior weight, if it is contradicted

15 by an examining professional's opinion which is supported by different independent clinical

16 findings, the Commissioner may resolve the conflict.  See Andrews v. Shalala, 53 F.3d 1035,

17 1041 (9th Cir. 1995).  A contradicted opinion of a treating or examining professional may be

18 rejected only for "specific and legitimate" reasons supported by substantial evidence.  See Lester,

19 81 F.3d at 830.  This test is met if the Commissioner sets out a detailed and thorough summary of

20 the facts and conflicting clinical evidence, states her interpretation of the evidence, and makes a

21 finding.  See Magallanes v. Bowen, 881 F.2d 747, 751-55 (9th Cir. 1989).  Absent specific and

22 legitimate reasons, the Commissioner must defer to the opinion of a treating or examining

23 professional.  See Lester, 81 F.3d at 830-31.  The opinion of a non-examining professional,

24 without other evidence, is insufficient to reject the opinion of a treating or examining

25 professional.  See id. at 831.  In any event, the Commissioner need not give weight to any

26 conclusory opinion supported by minimal clinical findings.  See Meanel v. Apfel, 172 F.3d 1111,

1  1113 (9th Cir. 1999) (rejecting treating physician's conclusory, minimally supported opinion);

2  see also Magallanes, 881 F.2d at 751.

3          Plaintiff basically argues the reasons provided for rejecting Dr. Dhaliwal's

4  opinion are not supported by substantial evidence.  The undersigned disagrees.  At best, the ALJ

5  was faced with two conflicting reports which he was charged with resolving the conflict between.

6  Dr. Dhaliwal's letter opinion is unsupported by specific findings resulting from the examination

7  he did of plaintiff.  In contrast, Dr. Yap set forth treatment notes on January 7, 2013, wherein

8  plaintiff informed her he was having no chest pain, was doing fine, and had no need to see a

9  cardiologist.  He denied palpitations, but had some shortness of breath on exertion since

10  November 2011, which was getting better.  Plaintiff thought the shortness of breath was from his

11  anxiety, but that his mood was fine, no depression just anxiety, and no need to do anything.

12  Plaintiff stated he had history of right knee pain from an injury, but is fine and had no need to

13  take pain medication.  As for his neck, he stated no shooting pain down to arm, he did notice

14  intermittent tingling and numbness of left fingers, but had no weakness or numbness of his arms.

15  As for his right shoulder, his pain was much better.  He stated he was no longer taking Celexa for

16  depression, nor Trazodone for sleep, instead wears CPAP for obstructive sleep apnea.  He did

17  state he has lower back pain, which has gotten slightly worse since his accident and knee injury,

18  but denied any pain shooting down to legs, tingling, numbness, or weakness of legs.  He

19  continued to take Norco and stated he can function better with the pain medication.  Her review

20  of plaintiff's systems indicates no chest pain or pressure, no shortness of breath, and no

21  complaints of depression.  Her physical exam found neck was supple, his gait was normal, had

22  negative Romberg sign, joints showed no swelling, erythema, or tenderness, and had full range of

23  movement.  He did have some shortness of breath on exertion and had a CT chest scan which

24  showed subacute lateral rib fractures which may account for his symptoms.  He wanted to see a

25  chiropractor for his low back and neck pain, but declined to see the pain clinic.  (CAR 765-73).

26  / / /

As these two treating and/or examining doctors conflict, the ALJ was charged with resolving the conflict which was done with support in the record.  Despite plaintiff's contention to the contrary, the record supports the ALJ's determination that Dr. Dhaliwal's opinion are inconsistent with the medical records.  Plaintiff fails to cite to medical records to support Dr. Dhaliwal's opinion, with the exception of one MRI.  The MRI plaintiff cites, dated November 19, 2010, shows normal alignment of the lumbar vertebral bodies, with vertebral heights maintained, moderate L5-S1 disc space narrowing, and mild spurring at other levels.  The impression was moderate to advanced L5-S1 degenerative disc disease; the primary diagnostic code was minor abnormality. (CAR 691).  This MRI is contrasted with another MRI in the record performed December 21, 2012.  This second MRI found all plaintiff's lumbar discs somewhat desiccated.  Again, there showed mild narrowing of the dorsal aspect of the L5-S1 disc, minor circumferential bulges of all the lowest 4 disc levels, but no disc herniation, spinal stenosis, or significant foraminal stenosis.  The impression was mild degenerative disc disease; the primary diagnostic code was minor abnormality.  (CAR 736-37).  Thus, contrary to plaintiff's assertion, the ALJ did not turn moderate to advanced L5-S1 degenerative disc disease into mild abnormalities on his own.  This is the medical interpretation from the MRI.  The MRI plaintiff relies on is insufficient for the court to find the ALJ's determination is not supported by the record.

## B.    Credibility

Plaintiff next argues the ALJ erred by failing to explain the credibility determination of both himself and his sister.  He contends the reasons provided are not meaningful.

In finding plaintiff's statement not entirely credible, the ALJ noted that:

> [d]espite [the medical] evidence, the claimant alleges that he has difficulty sleeping, can no longer hike, camp, attend hot-rod sho[w]s, pan for gold, ride his motorcycle or attend motorcycle gatherings, has difficulty lifting, squatting, bending, standing, walking, sitting, kneeling, climbing stairs, suffers from anxiety

attacks, fatigue, shortness of breath and depression.

(CAR 19).

The ALJ determined:

The claimant's allegations of severe physical impairment are not credible, to the extent alleged.  For example, a recent physical examination revealed normal gait and no evidence of muscle spasm (Ex. 10F/35).  Additional medical records revealed negative straight leg raises (Ex. 10F/53).  Moreover, treatment records revealed that the claimant denied tingling, numbness, and/or weakness in his lower extremities (Ex. 10F/37).  Finally, as stated above, MRI studies of the lumbar spine revealed only mild degenerative disc disease (Ex. 10F/45).

The claimant's allegations of severe shoulder impairment are not credible, to the extent alleged.  For example, treatment records also showed that the claimant stated that his right shoulder pain was "much better" (Ex. 10F/37).

Although the claimant has received various forms of treatment for the allegedly disabling symptoms, which would normally weigh somewhat in the claimant's favor, the record also reveals that the treatment has been generally successful in controlling the symptoms.  For example, medical records revealed that the claimant admitted that his right knee pain was fine and he did not need to take pain medication (Ex. 10F/36).  Claimant also testified at the hearing that after a June 2013 one and a half hour hike into the Trinity Alps, he had no serious problems with his knee.

The claimant did undergo surgery for the alleged impairment, which certainly suggests that the symptoms were genuine.  While that fact would normally weigh in the claimant's favor, it is offset by the fact that the record reflects that the surgery was generally successful in relieving the symptoms.  For example, treatment records revealed that the claimant stated that [he] had no chest pain, was doing fine and did not need to see a cardiologist (Ex. 10F/[3]6).  The claimant also denied heart palpitations and shortness of breath (Id).

The record reveals that the claimant failed to follow-up on recommendations made by the treating doctor, which suggests that the symptoms may not have been as serious as has been alleged in connection with this application and appeal.  For example, medical records also revealed that the claimant admitted that despite being advised to change his diet, his diet was "terrible" (Ex. 10F/57).

There is evidence that the claimant has not been entirely compliaint in taking prescribed medications, which suggests that the symptoms may not have been as limiting as the claimant has

1   alleged in connection with this application.  For example, medical
2   records revealed that the claimant admitted that he had not taken
    his Citalopram for many months (Ex. 3F/100).  Additionally,
3   medical records revealed that the claimant had not taken
    medication for his depression since 2010 (Ex. 10F/37).
4   Furthermore, treating physician, Gagan D. Singh, M.D. indicated
    that he was extremely suspect with the claimant's medication
5   compliance (Ex. 10F/57).

6   Finally, the medical records reveal that the medications have been
    relatively effective in controlling the claimant's symptoms.  For
7   example, medical records show that the claimant admitted that his
    anxiety had decreased and his sleep had improved with medication
8   (Ex. 3F/140).  He also state at the hearing that his CPAP machine
    works well and he has not needed a sleep aid more recently
9   (10F/37).

    (CAR 20-21).

10          As to plaintiff's sister, the ALJ stated:

11          The claimant's sister, Karen L. Donahue, submitted a Third Party
            Function Report wherein she alleges that the claimant has difficulty
12          sleeping, lifting, squatting, bending, standing, walking, sitting,
            kneeling, climbing stairs, and completing tasks.  Ms. Donahue
13          further alleges that the claimant suffers from fatigue, shortness of
            breath and has difficulty managing stress (Ex. 3E).  Ms. Donahue's
14          lay opinion cannot be afforded significant weight because it, like
            the claimant's, is simply not consistent with the preponderance of
15          the opinions and observations by medical doctors in this case.

16   (CAR 20).

17          The Commissioner determines whether a disability applicant is credible, and the

18   court defers to the Commissioner's discretion if the Commissioner used the proper process and

19   provided proper reasons.  See Saelee v. Chater, 94 F.3d 520, 522 (9th Cir. 1996).  An explicit

20   credibility finding must be supported by specific, cogent reasons.  See Rashad v. Sullivan, 903

21   F.2d 1229, 1231 (9th Cir. 1990).  General findings are insufficient.  See Lester v. Chater, 81 F.3d

22   821, 834 (9th Cir. 1995).  Rather, the Commissioner must identify what testimony is not credible

23   and what evidence undermines the testimony.  See id.  Moreover, unless there is affirmative

24   evidence in the record of malingering, the Commissioner's reasons for rejecting testimony as not

25   credible must be "clear and convincing."  See id.; see also Carmickle v. Commissioner, 533 F.3d

26   1155, 1160 (9th Cir. 2008) (citing Lingenfelter v Astrue, 504 F.3d 1028, 1936 (9th Cir. 2007),

1    and Gregor v. Barnhart, 464 F.3d 968, 972 (9th Cir. 2006)).

2            If there is objective medical evidence of an underlying impairment, the

3    Commissioner may not discredit a claimant's testimony as to the severity of symptoms merely

4    because they are unsupported by objective medical evidence.  See Bunnell v. Sullivan, 947 F.2d

5    341, 347-48 (9th Cir. 1991) (en banc).  As the Ninth Circuit explained in Smolen v. Chater:

6                    The claimant need not produce objective medical evidence of the
              [symptom] itself, or the severity thereof.  Nor must the claimant produce
7            objective medical evidence of the causal relationship between the
              medically determinable impairment and the symptom.  By requiring that
8            the medical impairment "could reasonably be expected to produce" pain or
              another symptom, the Cotton test requires only that the causal relationship
9            be a reasonable inference, not a medically proven phenomenon.

10    80 F.3d 1273, 1282 (9th Cir. 1996) (referring to the test established in Cotton v. Bowen, 799

11    F.2d 1403 (9th Cir. 1986)).

12            The Commissioner may, however, consider the nature of the symptoms alleged,

13    including aggravating factors, medication, treatment, and functional restrictions.  See Bunnell,

14    947 F.2d at 345-47.  In weighing credibility, the Commissioner may also consider: (1) the

15    claimant's reputation for truthfulness, prior inconsistent statements, or other inconsistent

16    testimony; (2) unexplained or inadequately explained failure to seek treatment or to follow a

17    prescribed course of treatment; (3) the claimant's daily activities; (4) work records; and (5)

18    physician and third-party testimony about the nature, severity, and effect of symptoms.  See

19    Smolen, 80 F.3d at 1284 (citations omitted).  It is also appropriate to consider whether the

20    claimant cooperated during physical examinations or provided conflicting statements concerning

21    drug and/or alcohol use.  See Thomas v. Barnhart, 278 F.3d 947, 958-59 (9th Cir. 2002).  If the

22    claimant testifies as to symptoms greater than would normally be produced by a given

23    impairment, the ALJ may disbelieve that testimony provided specific findings are made.  See

24    Carmickle, 533 F.3d at 1161 (citing Swenson v. Sullivan, 876 F.2d 683, 687 (9th Cir. 1989)).

25    / / /

26    / / /

1    In addition, an ALJ generally must consider lay witness testimony concerning a

2    claimant's ability to work.  See Dodrill v. Shalala, 12 F.3d 915, 919 (9th Cir. 1993); 20 C.F.R. §§

3    404.1513(d)(4) & (e), 416.913(d)(4) & (e).  Indeed, "lay testimony as to a claimant's symptoms

4    or how an impairment affects ability to work is competent evidence . . . and therefore cannot be

5    disregarded without comment."  See Nguyen v. Chater, 100 F.3d 1462, 1467 (9th Cir. 1996).

6    Consequently, "[i]f the ALJ wishes to discount the testimony of lay witnesses, he must give

7    reasons that are germane to each witness."  Dodrill, 12 F.3d at 919.  The ALJ may cite same

8    reasons for rejecting plaintiff's statements to reject third-party statements where the statements

9    are similar.  See Valentine v. Commissioner Soc. Sec. Admin., 574 F.3d 685, 694 (9th Cir. 2009)

10   (approving rejection of a third-party family member's testimony, which was similar to the

11   claimant's, for the same reasons given for rejection of the claimant's complaints).

12   Plaintiff contends the credibility determination lacked explanation and is vague.

13   The undersigned disagrees.  The ALJ provided specific clear reasons for determining that

14   plaintiff's symptom allegations were not fully credible.  The ALJ determined plaintiff's treatment

15   had been generally successful in treating his symptoms, his allegations of severe physical

16   impairment was inconsistent with reports to his treating physician as to his current condition and

17   symptoms, had failed to follow all treatment and medical advise, and had not been fully

18   compliant.  These are all valid reasons for discounting the severity of plaintiff's symptom

19   allegations.  The undersigned finds no error.

20   Similarly, the ALJ gave specific reasons why he was discounting plaintiff's

21   sister's testimony, and those reasons were germane to her.  The ALJ determined her opinion was

22   "simply not consistent with the preponderance of the opinions and observations by medical

23   doctors in this case."  (CAR 20).  Thus, the undersigned finds no error in the ALJ's credibility

24   determination.

25   ///

26   ///

12

C.       **Residual Functional Capacity**

Finally, plaintiff argues the ALJ erred in at determining both his physical and mental RFC.  Plaintiff contends the ALJ failed to set forth the required narrative discussion as to how the conclusion was reached.

Residual functional capacity is what a person "can still do despite [the individual's] limitations." 20 C.F.R. §§ 404.1545(a), 416.945(a) (2003).  In determining residual functional capacity, the ALJ must assess what the plaintiff can still do in light of both physical and mental limitations.  See 20 C.F.R. §§ 404.1545(a), 416.945(a) (2003); see also Valencia v. Heckler, 751 F.2d 1082, 1085 (9th Cir. 1985) (residual functional capacity reflects current "physical and mental capabilities").

As to plaintiff's physical RFC, the merits of plaintiff's argument essentially rests on the contention that the ALJ erred in discounting Dr. Dhaliwal's opinion in favor of the treatment notes from Dr. Yap.  However, as discussed above, the undersigned finds no error in the ALJ's treatment of the medical opinions and records.  The ALJ determined plaintiff has the capacity to perform light work, excepted he is limited in his lifting and carrying abilities, siting, standing, and walking abilities, as well as having manipulative limitations.  These limitations are close to those opined by Dr. Dhaliwal.  However, the ALJ found plaintiff more capable than the limitations opined by Dr. Dhaliwal.  The state reviewing physicians opined plaintiff was significantly more capable as to his physical abilities.  However, the ALJ found those opinions inconsistent with the record.  Thus, the ALJ did as he is charged to do, and determined based on the medical records and especially Dr. Yap's examination records, that plaintiff is less limited than Dr. Dhaliwal opined, but more limited than the state reviewing physicians opined.  The undersigned agrees with defendant, that the ALJ could have elaborated more as to his final determination.  Regardless, significant evidence supports the ALJ's determination as to plaintiff's physical limitations.

/ / /

1         Similarly, as to his mental RFC, the ALJ found plaintiff was limited in his ability

2  to interact with the public and coworkers.   In so determining, the ALJ gave moderate weight to

3  the opinion of examining psychologist Dr. Boyle.  Dr. Boyle stated:

4            Regarding **ability to work**, Mr. Gruber's significant difficulties
             with depression and anxiety would cause significant difficulties in

5            work settings.  It is very likely that the severity of his psychiatric
             symptoms would preoccupy him and distract him.  His moderate

6            levels of depression and anxiety could cause difficulties in
             interpersonal relationships with others.  His current psychiatric

7            issues could undermine success in the work setting.

8  (CAR 804 (emphasis in original)).

9         Dr. Boyle's opinion is in contrast to the state reviewing psychologists who opined

10  that plaintiff's psychological impairment was nonsevere.  The ALJ found the state reviewing

11  psychologists' opinion to be "contrary to the weight of the evidence that suggests at least

12  minimal functional limitations." (CAR 19).  As the ALJ found plaintiff's allegations not entirely

13  credible, as discussed above, that he denied being depressed, and that the medical records

14  supported finding his medication was effective, his anxiety had decreased and sleep improved

15  with medication, he determined plaintiff had limitations as to his ability to get along with others

16  but did not specifically include limitations as to plaintiff's concentration, persistence, and pace

17  abilities.  Plaintiff argues these limitations should have been included.  As defendant argues, the

18  positions the ALJ found plaintiff capable of performing are unskilled jobs, and the record fails to

19  reveal any difficulties plaintiff had in maintaining concentration, persistence and pace.

20  Defendant points to plaintiff's statement and treatment records which indicate plaintiff had no

21  difficulty paying attention and admitting to Dr. Yap that he was not depressed and did not need

22  any mental health treatment.  Again, the ALJ could have elaborated more as to his findings, but

23  the undersigned finds the mental RFC to be supported by the record.

24                      **IV.  CONCLUSION**

25         Based on the foregoing, the court concludes that the Commissioner's final

26  decision is based on substantial evidence and proper legal analysis.  Accordingly, IT IS HEREBY

ORDERED that:

      1.    Plaintiff's motion for summary judgment (Doc. 14) is denied;

      2.    Defendant's cross-motion for summary judgment (Doc. 21) is granted; and

      3.    The Clerk of the Court is directed to enter judgment and close this file.

DATED:  March 27, 2017

**CRAIG M. KELLISON**
UNITED STATES MAGISTRATE JUDGE